**INWOOD LABORATORIES, INC., Plaintiff,**

v.

**Frank E. YOUNG, M.D., et al., Defendants.**

**Civ. A. No. 89–0845 (HHG).**

United States District Court, District of Columbia.

May 12, 1989.

Alan H. Kaplan, Richard S. Morey, Peter R. Mathers, Kleinfeld, Kaplan & Becker, Washington, D.C. (James S. Rubin, of counsel), for plaintiff.

Charles F. Flynn, Asst. U.S. Atty., Washington, D.C. (Thomas Scarlett, Chief Counsel, David G. Adams, Associate Chief Counsel for Drugs, Office of Gen. Counsel, U.S. Food & Drug Admin., of counsel), for defendants.

## MEMORANDUM

HAROLD H. GREENE, District Judge.

This case involves certain exclusivity provisions in the Drug Price Competition and Patent Term Restoration Act of 1984, Pub.L. No. 98–417 ("1984 Amendments"). Plaintiff, a generic manufacturer of drug products containing controlled-release propranolol HC1, seeks declaratory and injunctive relief requiring the FDA to delay by 180 days the effective dates of approval of similar products manufactured by its competitors. It claims that it is entitled to such exclusivity by virtue of the 1984 amendments, more specifically by 21 U.S.C. § 355(j)(4)(B)(iv). The Food and Drug Administration ("FDA") asserts that the plaintiff is not entitled to such exclusivity, and it has filed a motion to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief may be granted.

### I

#### Background

The parties agree that it is the purpose of the 1984 amendments to facilitate the entry of generic drugs into the market by allowing manufacturers of generic drugs "to rely on FDA determinations of safety and effectiveness with regard to the innovator's drug." FDA's Motion to Dismiss at 2; see also, Mead Johnson Pharmaceutical Group v. Bowen, 838 F.2d 1332, 1333 (D.C.Cir.1988). The amendments establish guidelines under which so-called abbreviated new drug applications ("ANDAs") are to be submitted by generic drug manufacturers seeking FDA approval of their copies of drugs that had previously been approved. In most circumstances, approval is to be made effective after the expiration of the patent for the original drug.

The 1984 amendments provide an exception to this requirement, however. 21

U.S.C. § 355(j)(2)(A)(vii) permits a generic manufacturer to certify with his ANDA that the patent is not a bar to effective approval for any one of four reasons. Of relevance in this lawsuit is certification IV in which the applicant certifies "that the patent is invalid or will not be infringed by the drug sought to be approved in the ANDA." 21 U.S.C. § 355(j)(2)(A)(vii)(IV). Under 21 U.S.C. § 355(j)(2)(B), an ANDA applicant who submits a paragraph IV certification is also required to notify the patent holder and pioneer manufacturer of the reasons for its contention that the patent is invalid or would not be infringed by the new generic product.[1]

The exclusivity provisions at issue in this case are contained in 21 U.S.C. § 355(j)(4)(B)(iv). That section provides that

> If the application contains a [paragraph IV certification] and is for a drug for which a previous application has been submitted under this subsection containing such a certification, the application shall be made effective not earlier than one hundred and eighty days after—
>
> > (I) the date the Secretary receives notice from the applicant under the previous application of the first commercial marketing of the drug under the previous application, or
> >
> > (II) the date of a decision of a court in an action described in clause (iii) holding the patent to be invalid or not infringed, whichever is earlier.

The parties agree that the plaintiff submitted an ANDA containing a paragraph IV certification, that it notified the patent holder of its contention that the patent would not be infringed by the proposed generic product, that it was the first to file such an ANDA, and that the patent holder elected not to sue. Accordingly, FDA approval became effective immediately upon approval on April 11, 1989. Plaintiff notified the FDA of its first commercial marketing on April 24, 1989, and it claims that it is entitled to 180 days of exclusivity under 21 U.S.C. § 355(j)(4)(B)(iv)(II).

As the FDA interprets the statute, however, the 180–day exclusivity "commences only when the primary ANDA has been sued for patent infringement under 355(j)-(4)(B)(iii)." Motion to Dismiss at 4. In other words, the FDA claims that the filing of a lawsuit under section 355(j)(4)(B)(iii) must be read into section 355(j)(4)(B)(iv) as a precondition to the applicability of exclusivity. Under that construction, since the relevant patent holder chose not to sue plaintiff Inwood, it is the FDA's position that Inwood is not entitled to 180 days of exclusivity. That, then, is the issue before the Court.[2]

## II

### *The Statute is Clear*

■ The FDA presents a number of arguments in support of the reasonableness of its interpretation, and asserts that that interpretation is entitled to deference under *Chevron U.S.A. v. Natural Resources Defense Council,* 467 U.S. 837, 843, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984). However, as the Court in *Chevron* pointed out, and as has been the law both before and since *Chevron,* an agency's interpretation of the statute should only be considered where the "statute is silent or ambiguous with respect to the specific issue...." 467 U.S. at 843, 104 S.Ct. at 2782. When the statute is clear on its face, resort to the legislative history, much less to the agency's interpretation, is not necessary. *Eagle–Picher Industries, Inc. v. U.S. E.P.A.,* 759 F.2d 922 (D.C.Cir.1985); *United Transportation Union v. Lewis,*

---

**1.** The patent holder, confronted with notice of the manufacturer's IV certification, is required by 21 U.S.C. § 355(j)(4)(B)(iii) to file suit for patent infringement within forty-five days of receiving notice of the IV certification or else the ANDA will become effective immediately upon FDA approval. If the patent holder does file suit, section 355(j)(4)(B)(iii) provides that the application may become effective only after thirty months of litigation or after the Court determines that the patent is invalid or not infringed.

**2.** Pending before the Court are plaintiff's motion for summary judgment and for a preliminary injunction, and the FDA's motion to dismiss.

711 F.2d 233 (D.C.Cir.1983); *Markham v. Colonial Mortgage Service Co.*, 605 F.2d 566 (D.C.Cir.1979); *Elm City Broadcasting Corp. v. U.S.*, 235 F.2d 811, 816 (D.C. Cir.1956).

 Thus, the Court must consider first whether the language of the statute is clear. If it is, consideration of administrative interpretation contrary to such language is inappropriate; the agency cannot by its interpretation, override the congressional will as memorialized in the statutory language.

Section 355(j)(4)(B)(iv) explicitly provides that a primary generic manufacturer may qualify for the 180 day exclusivity in one of two ways—by compliance with subpart I or by compliance with subpart II. One of these methods, set forth in subpart II of section (IV), by its terms requires a suit for patent infringement pursuant to section 355(j)(4)(B)(iii). The alternative method, set forth in subpart I, does not. Indeed, it makes no mention of a suit for patent infringement, but instead makes the 180–day exclusivity dependent on the first commercial marketing of the product. In light of the clear reference to a section (iii) lawsuit in subpart II of section (iv), and the omission of such a reference in subpart I of section (iv), there is no justification whatever for implying such a reference into subpart I notwithstanding Congress' presumably deliberate decision not to incorporate the lawsuit requirement in that subpart.

The two alternatives are clear, and they establish a complete and workable statutory scheme. A primary ANDA applicant can qualify for exclusivity beginning *either* on the date of a court decision invalidating a patent or holding that it is not infringed *or* on the date of first commercial marketing of the applicant's product. The trigger for the exclusivity period is the filing of an ANDA containing a IV certification for "a

drug for which a previous application has been submitted...." Section 355(j)(4)(B)(iv). There is no ambiguity in the provisions of subpart I that requires the Court or permits the FDA to read into it a requirement of a lawsuit which is simply not there.[3]

### III

*Reasonableness of FDA Interpretation*

 Because the statute is clear on its face, it is not necessary for the Court to consider the FDA's interpretation of the statute. The Court notes briefly, however, that while there may be disadvantages to applying the statute as written—as the FDA argues—there are also problems with the interpretation offered by that agency.

The FDA insists that the purpose of section 355(j)(4)(B)(iv) is to reward generic manufacturers who successfully pursue a patent infringement lawsuit and thereby open up the market to generic competition. This ignores the contribution that manufacturers such as Inwood make by submitting documentation to a patent holder which is so detailed and persuasive that the patent holder decides not to file a lawsuit. Such a contribution is equally valuable in terms of opening up the market to generic competition.

In addition, the FDA's interpretation places the decision as to whether a generic manufacturer will be entitled to exclusivity entirely in the hands of the patent holder. If that holder sues the first applicant who submits a section IV certification, that applicant will be entitled to exclusivity; if the patent holder does not sue, there is no exclusivity. Under the FDA's interpretation, if the patent holder chooses to sue only the second, the third, or the fifth applicant, the rather bizarre result will be that no one is entitled to exclusivity[4] al-

---

**3.** In light of the clarity of the statute, the legislative history to the contrary would have to be extremely persuasive in order to justify any contrary reading. *Aaron v. SEC*, 446 U.S. 680, 697, 100 S.Ct. 1945, 1956, 64 L.Ed.2d 611 (1980). The FDA has cited no legislative history that conflicts with the clear language of the statute and the Court has found none. All that is contrary to the statutory language is the FDA's construction, and that, obviously cannot vary the meaning of the statute.

**4.** The first applicant because he was not being sued; the second, third, or fifth applicant because he was not the first.

though one applicant bore the burden of filing a section IV certification and another that of defending against patent infringement suit. *See Mylan.* By subjecting the exclusivity entitlement to the caprices of the patent holder, the FDA's interpretation would seem to affect adversely the incentives that Congress sought to create in providing for 180 days of exclusivity for the manufacturers of generic drugs.

Finally, the FDA states that acceptance of the statute as written will lead to the "absurd" result that in some cases the delay of approval of subsequent ANDAs will never end. This could occur, according to the agency, if the first ANDA submitted never resulted in a commercial marketing because it was not approved by the FDA, because the manufacturer was unable to bring it to market, or because the manufacturer delayed marketing in order to harm its competitors. This last possibility is not likely because of the clear economic incentives to get the product on the market and begin enjoying the period of exclusivity as soon as possible. In fact, in plaintiff's case, first commercial marketing occurred less than two weeks after effective approval of its application. The economic incentives to commercially marketing a generic drug under an assurance of exclusivity are likely to overcome most obstacles to marketing.

It is possible, however, that, as the FDA points out, in some rare cases the application of the statute as drafted will have the effect of delaying the entry into the market of subsequent generic drugs, and it may well be that this problem warrants consideration by Congress. This potential problem, however, does not give the FDA or this Court a license to read into the present, clear language of section 355(j)(4)(B)(iv)(I) a requirement of a suit for patent infringement that is simply not there.

The Court will deny defendants' motion to dismiss, and it will issue an injunction, in accordance with plaintiff's complaint and motion for summary judgment, to enjoin the FDA from approving any subsequent ANDAs for 60 mg., 80 mg., 120 mg., or 160 mg., propranolol hydrochloride controlled release capsules with effective dates less than 180 days after April 24, 1989.