**MOVA PHARMACEUTICAL CORP., Plaintiff,**

v.

**Donna SHALALA, Secretary, U.S. Department of Health and Human Services, et al., Defendants,**

**Mylan Pharmaceuticals Inc., Intervenor.**

**Civil Action No. 96–2861 (JR).**

United States District Court, District of Columbia.

Jan. 23, 1997.

Ronald L. Grudziecki, Burns, Doane, Swecker & Mathis, Alexandria, VA, and James S. Rubin, West New York, NJ, for Plaintiff.

Drake Cutini, Office of Consumer Litigation, U.S. Department of Justice, Washington, DC, for Defendants.

E. Anthony Figg, Steven Lieberman, and Michael G. Sullivan, Rothwell, Figg, Ernst & Kurz, Washington, DC, for Intervenor.

## MEMORANDUM

ROBERTSON, District Judge.

Mova Pharmaceutical Corp. sues to compel the Food and Drug Administration ("FDA") to withdraw or change the effective date of its December 19, 1996 approval of an Abbreviated New Drug Application ("ANDA") submitted by Mylan Pharmaceuticals Inc. Mova's motion for preliminary injunction was heard on an expedited basis after its application for a temporary restraining order was denied on December 26, 1996.[1] Mylan has intervened to protect its interests.

### Background

In December 1994, Mova submitted to FDA an ANDA for pharmaceutical compositions that included micronized glyburide. Pursuant to 21 U.S.C. § 355(j)(2)(A)(vii), Mova certified that its formulations do not infringe on a patent owned by Upjohn Company (United States Letters Patent No. 4,916,163), and it notified Upjohn of the filing. On March 27, 1995, Upjohn brought suit in the United States District Court for the District of Puerto Rico alleging that Mova's ANDA constituted an act of patent infringement. That patent litigation is still pending. The filing of Upjohn's infringement suit operated, under applicable provisions of the Drug Price Competition and Patent Term Restoration Act of 1984, Pub.L. No. 98–417, 98 Stat. 1585 (1984) ("Hatch–Waxman Amendments"), as an automatic stay of the effectiveness of any FDA approval of Mova's ANDA.[2]

On November 22, 1995, eight months after Upjohn's infringement case brought Mova's application to a standstill, Mylan filed another ANDA for a generic micronized glyburide product. Mylan initially certified its product under a provision of the statute permitting FDA approval of a generic drug only upon expiration of the NDA-holder's patent—in the case of the Upjohn patent, in the year 2007. 21 U.S.C. § 355(j)(2)(A)(vii)(III). In August 1996, Mylan amended its certification to challenge Upjohn's patents, just as Mova had done, by invoking paragraph IV of 21 U.S.C. § 355(j)(2)(A)(vii). A paragraph IV

---

1. Mova's suggestion that its application for preliminary injunctive relief be treated as a motion for summary judgment will not be accepted. While there appear to be no genuine issues of material fact, and there is authority for advancing the trial of the merits during the hearing of a motion for preliminary injunction, *see* Fed. R.Civ.P. 65(a)(2), neither FDA nor Mylan has had the opportunity to respond to the pending motion as if it were one for summary judgment.

2. 21 U.S.C. § 355(j)(4)(B)(iii). Once a patent infringement suit is filed against the first ANDA applicant "the [FDA] approval [of the generic drug] shall be made effective upon the expiration of the 30–month period beginning on the date of the receipt [of the required notice to patent owners] or such shorter or longer period as the court may order because either party to the action failed to reasonably cooperate in expediting the action [with certain enumerated exceptions]...."

certification asserts that a drug patent is invalid, or that it will not be infringed by the manufacture, use or sale of the generic drug that is the subject of the ANDA. Mylan gave notice of its paragraph IV certification to Upjohn, just as Mova had done. In Mylan's case, however, Upjohn did *not* sue for infringement. On December 19, 1996, FDA approved Mylan's ANDA.

### Analysis

Mova argues that FDA violated 21 U.S.C. § 355(j)(4)(B)(iv) by approving the Mylan ANDA. That provision reads as follows:

"If the application contains a certification described in subclause (IV) of paragraph (2)(A)(vii) and is for a drug for which a previous application has been submitted under this subsection continuing such a certification, the application shall be made effective not earlier than one hundred and eighty days after—

(I) the date the Secretary receives notice from the applicant under the previous application of the first commercial marketing of the drug under the previous application, or

(II) the date of a decision of a court in an action described in clause (iii) holding the patent which is the subject of the certification to be invalid or not infringed, whichever is earlier." [3]

Mova contends that this provision is applicable foursquare to the facts of this case: Mylan's application contained a certification under paragraph IV and is for a micronized glyburide drug. Mova has submitted a previous application under the same subsection for the same type of drug. It is accordingly unlawful for FDA to approve Mylan's ANDA until a date 180 days after (i) Mova begins commercially marketing its drug (which has not happened yet), or (ii) the court in Puerto Rico holds the Upjohn patent invalid or not infringed (which also has not happened), whichever is earlier.

■ FDA and Mylan respond that the Mylan ANDA was approved pursuant to a regulation issued by FDA after enactment of

the Hatch–Waxman Amendments. The particular regulation in question, 21 C.F.R. § 314.107(c)(1), conditions the 180-day market exclusivity period on the requirement that "the applicant submitting the first application [here, Mova] has *successfully defended* against a suit for patent infringement brought within 45 days of the patent owner's receipt of notice...." (emphasis added). Because Mova's defense of the infringement action has not yet succeeded, FDA asserts that Mova is not entitled to the 180-day market exclusivity. According to FDA, the "successful defense" requirement is an agency interpretation made necessary by statutory ambiguity. The suggested ambiguity is that the statute does not make provision for the circumstance presented by this case: the first ANDA applicant has been sued for patent infringement, but the second has not.

■ *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984) requires deference to an agency interpretation if Congress has not "directly spoken to the precise question at issue" and if the agency interpretation is reasonable. This case, however, does not require *Chevron* deference, for the statute is neither "silent [n]or ambiguous." FDA's approval of Mylan's ANDA cannot be effective, under 21 U.S.C. § 355(j)(4)(B), until the *last applicable date* determined under its four subsections. The language of the statute may be complex, and even cumbersome, but it is plain and unambiguous. It does not include a "successful defense" requirement, and indeed it does not even require the institution of patent litigation. It was Mova's first filing of an ANDA for micronized glyburide under paragraph IV, and not Upjohn's infringement suit, that required FDA to withhold approval from subsequent paragraph IV filers. *Inwood Laboratories, Inc. v. Young,* 723 F.Supp. 1523, 1526 (D.D.C.1989), *vacated as moot,* 43 F.3d 712 (D.C.Cir.1989).

In their oral arguments opposing the motion for preliminary injunction, counsel for FDA and Mylan laid out scenarios of what could happen if the statute were applied as

---

**3.** The word "continuing" in the first clause looks like a typographical error that should have been printed "containing." No party focused on the word in any case.

written, without the "successful defense" requirement. They argued that the statute as written encourages frivolous ANDA filings and that without the successful defense requirement the entry of generic drugs into the market could be delayed or even manipulated, thereby undermining the larger purpose of the Hatch–Waxman Amendments to make available more low-cost generic drugs. Mylan predicted that if Mova loses the Upjohn patent infringement case, or if the patent litigation is not concluded at the end of the 30–month automatic stay (*see* footnote 2, *supra*), Mova will not dare to market its product. And Mylan submitted that without the "successful defense" requirement the entire generic market for micronized glyburides will be hostage to Mova's patent litigation and ANDA.

Those defense arguments are supported only by speculation. The operation of the statute on the facts of this case may appear to FDA to be unwise, and may appear to Mylan to be an invitation for abuse, but their remedy lies with Congress, not this Court.

Because the statutory language clearly dictates the outcome of this case, plaintiff's likelihood of success on the merits must be reckoned as very high.

■ The second element of the four-part test prescribed by *Washington Metropolitan Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 842–43 (D.C.Cir.1977), is irreparable injury. While it is undisputed that Mova has neither prevailed in its patent litigation with Upjohn nor obtained final approval of its ANDA for micronized glyburide from the FDA, the record establishes that depriving Mova of a 180–day statutory grant of exclusivity and giving Mylan an officially sanctioned head start in the market for generic micronized glyburide products will cause injury to Mova. All parties recognize that the earliest generic drug manufacturer in a specific market has a distinct advantage over later entrants. In particular, Mova, a small company, will have difficulty competing against the much larger Mylan if Mylan is allowed to enter the generic micronized glyburide market and capture market share

while Mova remains entangled with patent litigation. Mylan argues that both it and Mova will be competing only for the crumbs left from the competition between Upjohn, the patent holder, and Copley, which already has authority to market generic micronized glyburide.[4] That argument addresses only the quantum of Mova's irreparable injury, however. Where, as here, the likelihood of success on the merits is very high, a much smaller quantum of injury will sustain an application for preliminary injunction. *Cuomo v. United States Nuclear Regulatory Comm'n*, 772 F.2d 972, 974 (D.C.Cir.1985) (per curiam).

As for the third and fourth prongs of the balancing test: the public interest in faithful application of the statutes outweighs the public interest in what Mylan concedes (considering the already-established market position of the Copley product) would be a marginal increase in the availability of low-cost generic drug products to American consumers, particularly where, as here, the very statute that was designed with consumers' interests in mind is the statute which so clearly entitles Mova to relief; and, although obviously an injunction requiring the FDA to withdraw the approval of Mylan's ANDA will not be without cost to Mylan, the high likelihood of Mova's eventual success on the merits suggests that the cost to Mylan would be even greater if relief were not granted until some later date, when Mylan's marketing plans are even farther along.

### PRELIMINARY INJUNCTION

Upon consideration of plaintiff's motion for a preliminary injunction, defendant's and intervenor's opposition, plaintiff's reply, and the oral arguments of counsel, it appears that plaintiff is likely to prevail on the merits of its claim that the Food and Drug Administration improperly granted approval of Mylan Pharmaceuticals Inc.'s Abbreviated New Drug Application ("ANDA") for a formulation including micronized glyburide on December 19, 1996 in contravention of 21 U.S.C. § 355(j)(4)(B)(iv); that, unless the approval is

---

4. Copley received FDA approval for its generic product after filing a full New Drug Application and is not subject to the statutory restrictions upon ANDAs.

withdrawn or suspended the plaintiff, Mova Pharmaceutical Corporation, will suffer irreparable harm; and that public interest considerations weigh more heavily in favor of granting preliminary injunctive relief than against it. It is accordingly this 23rd day of January, 1997,

**ORDERED** that plaintiff's motion for a preliminary injunction [# 2] is **granted.** It is

**FURTHER ORDERED** that the Food and Drug Administration suspend its approval of Mylan's ANDA for micronized glyburide until a date that is not earlier than one hundred and eighty days after (i) the date Mova gives notice to the Secretary of HHS that it has undertaken the first marketing of micronized glyburide under its ANDA or (ii) the date of a decision in the U.S. District Court for the District of Puerto Rico holding that U.S. Patent No. 4,916,163 is invalid or not infringed by Mova's ANDA, or until further order of this Court. It is

**FURTHER ORDERED** that this preliminary injunction is immediately effective and shall remain in effect according to its terms unless plaintiff fails by 12:00 noon on January 27, 1997, to file a bond or give other security in the amount of $10,000 for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained. *See* Local Rule 116.