Filed:  May 7, 1998

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

Nos. 97-1873(L)
(CA-97-485-5-BO)

Granutec, Incorporated,

Plaintiff - Appellee,

versus

Genpharm, Incorporated,

Intervenor - Appellant.

O R D E R

The Court amends its opinion filed April 3, 1998, as follows:

On page 3, section 1, line 4 -- the following attorneys are added for Genpharm:  "Edgar H. Haug, Barry S. White, James K. Stronski, FROMMER, LAWRENCE & HAUG, L.L.P., New York, New York."

On page 15, footnote 2, line 11 -- the sentence is corrected to begin "Glaxo appealed that judgment . . . ."

For the Court - By Direction

/s/ Patricia S. Connor

Clerk

UNPUBLISHED

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

GRANUTEC, INCORPORATED,
Plaintiff-Appellee,

v.

DONNA E. SHALALA, SECRETARY OF
HEALTH AND HUMAN SERVICES; MICHAEL
FRIEDMAN, M.D.; FOOD & DRUG
ADMINISTRATION,

No. 97-1873

Defendants,

and

GENPHARM, INCORPORATED,
Intervenor-Appellant.

BOEHRINGER INGELHEIM CORPORATION,
Amicus Curiae.

GRANUTEC, INCORPORATED,
Plaintiff-Appellee,

v.

DONNA E. SHALALA, SECRETARY OF

No. 97-1874

HEALTH AND HUMAN SERVICES; MICHAEL
FRIEDMAN, M.D.; FOOD & DRUG
ADMINISTRATION,
Defendants-Appellees,

and

GENEVA PHARMACEUTICALS,
INCORPORATED,
<u>Intervenor-Appellant.</u>
BOEHRINGER INGELHEIM CORPORATION,
<u>Amicus Curiae.</u>

Appeals from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
Terrence W. Boyle, Chief District Judge.
(CA-97-485-5-BO)

Argued: October 1, 1997

Decided: April 3, 1998

Before RUSSELL* and MOTZ, Circuit Judges, and PHILLIPS,
Senior Circuit Judge.

_____

Reversed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Richard Melvyn Cooper, WILLIAMS & CONNOLLY,
Washington, D.C., for Appellant Genpharm; Joel E. Hoffman, SUTH-
ERLAND, ASBILL & BRENNAN, L.L.P., Washington, D.C., for
Appellant Geneva. Howard Stanley Scher, Appellate Staff, Civil
Division, UNITED STATES DEPARTMENT OF JUSTICE, Wash-
ington, D.C.; Robert Fritz Green, LEYDIG, VOIT & MAYER, LTD.,
Chicago, Illinois, for Appellees. **ON BRIEF:** George A. Borden, Dan

_____

* Judge Russell heard oral argument in this case but died prior to the
time the opinion was filed. The opinion is filed by a quorum of the panel.
28 U.S.C.A. § 46(d) (West 1993).

S. Sokolov, WILLIAMS & CONNOLLY, Washington, D.C.; Robert W. Spearman, Catharine B. Arrowood, Robert H. Tiller, PARKER, POE, ADAMS & BERNSTEIN, L.L.P., Raleigh, North Carolina; Edgar H. Haug, Barry S. White, James K. Stronski, FROMMER, LAWRENCE & HAUG, L.L.P., New York, New York, for Appellant Genpharm. Hamilton P. Fox, III, Timothy J. Cooney, Kristen J. Indermark, Melina Zacharopoulos, SUTHERLAND, ASBILL & BRENNAN, L.L.P., Washington, D.C.; Steven J. Lee, Frederick H. Rein, Reem F. Jishi, KENYON & KENYON, New York, New York; Noel Allen, ALLEN & PINNIX, P.A., Raleigh, North Carolina, for Appellant Geneva. Frank W. Hunger, Assistant Attorney General, Janice McKenzie Cole, United States Attorney, Douglas N. Letter, Appellate Staff, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Margaret Jane Porter, Chief Counsel, Elizabeth H. Dickinson, Catherine M. Cook, Office of the Chief Counsel, FOOD & DRUG ADMINISTRATION, Rockville, Maryland, for Federal Appellees. John F. Fleder, David F. Weeda, Arthur Y. Tsien, OLSSON, FRANK & WEEDA, P.C., Washington, D.C.; John R. Wallace, WALLACE, CREECH & SARDA, L.L.P., Raleigh, North Carolina, for Appellee Granutec. Barbara S. Wahl, ARENT, FOX, KINTNER, PLOTKIN & KAHN, Washington, D.C.; Martin B. Pavane, Michael C. Stuart, COHEN, PONTANI, LIEBERMAN & PAVANE, New York, New York, for Amicus Curiae.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

This appeal concerns the Food and Drug Administration's enforcement of certain provisions of 21 U.S.C.A. § 355, part of the 1984 revision to the Food, Drug, and Cosmetic Act known collectively as the "Hatch-Waxman Amendments." See Drug Price Competition and Patent Term Restoration Act of 1984, Pub. L. No. 98-417, 98 Stat. 1585 (1984). The district court determined that the Food and Drug Administration (FDA) incorrectly declined to apply the terms of a

3

regulation, promulgated pursuant to the Hatch-Waxman Amendments, that the District Court for the District of Columbia had all but held invalid in <u>Mova Pharmaceutical Corp. v. Shalala</u>, 955 F. Supp. 128 (D.D.C. 1997).

At the time of the district court's decision in the present case, FDA had decided:

> to acquiesce temporarily -- pending an appellate decision overturning the district court decision or a favorable ruling on summary judgement -- in the <u>Mova</u> preliminary injunction in order to promote administrative uniformity and to avoid forum shopping problems that would lead . . . applicants back to the United States District Court for the District of Columbia where the <u>Mova</u> decision was rendered.

Brief of FDA at 11. Genpharm, Inc., and Geneva Pharmaceuticals, Inc., intervened in opposition to Granutec's motion for an injunction, with each cross-claiming that it was entitled to the 180-day exclusive marketing period Granutec sought to enjoin.

For the reasons set forth within, we conclude that the regulation Granutec seeks to enforce is invalid. Further, we hold that, as the first applicant under the statute, Genpharm was entitled to a 180-day exclusivity period measured from March 3, 1997, until August 29, 1997. We therefore reverse the judgment of the district court.

I.

A.

The provision of the Hatch-Waxman Amendments relevant to this appeal concerns the availability of a 180-day market exclusivity period to the first company that seeks, under certain circumstances, to market a generic form of a patented drug approved by the FDA. Under the Food, Drug, and Cosmetic Act generally, pioneer drug manufacturers must obtain FDA approval for any new drug by filing a New Drug Application (NDA), which requires the submission of specific data concerning the safety and effectiveness of the drug, as

4

well as any information on applicable patents. All drug patent information is published by the FDA.

One of the primary innovations of the Hatch-Waxman Amendments is an additional provision that allows companies subsequently seeking to produce and market a generic form of a pioneer drug to avoid filing a full NDA. Instead, these companies may file only an Abbreviated New Drug Application (ANDA), in which they may rely on the findings of safety and effectiveness included in the original NDA. The only important new information that must be included in the ANDA regards the generic company's position vis-a-vis the original patent, and the company must make one of four certifications: I) that no patent for the pioneer drug has been filed; II) that the patent for the pioneer drug has expired; III) that the patent for the pioneer drug will expire on a particular date; or IV) that the patent for the pioneer drug is invalid or will not be infringed upon by the proposed generic. See 21 U.S.C.A. § 355(j)(2)(A)(vii) (West Supp. 1997). The last of these, commonly referred to as a "Paragraph IV" certification, is the certification at issue in this appeal.

If a generic company chooses Paragraph IV certification, it must notify both the patent owner and the NDA holder of the ANDA application. That notification must include the basis for why the proposed generic does not infringe upon the patent, or why that patent is invalid. See 21 U.S.C.A. § 355(j)(2)(B) (West Supp. 1997). After such notice, an action for patent infringement must be brought within 45 days, and if no such action is brought, FDA may approve the ANDA. If an infringement action is brought, FDA cannot approve the ANDA for 30 months, unless the matter is adjudicated in the ANDA applicant's favor or the court hearing the suit orders a shorter or longer waiting period. See 21 U.S.C.A. § 355(j)(4)(B)(iii) (West Supp. 1997).

In addition, and here we reach the statutory provision contested in this appeal, the Hatch-Waxman Amendments also provide an incentive for companies to challenge patents and develop alternative forms of patented drugs by offering a 180-day period of market exclusivity to those who successfully make their Paragraph IV certifications. The relevant provision states:

5

(iv) If the application [ANDA] contains a certification described in [Paragraph IV] . . . and is for a drug for which a previous application has been submitted under this subsection continuing [sic: usually read as "containing"] such a certification, the application shall be made effective not earlier than one hundred and eighty days after--

(I) the date the Secretary receives notice from the applicant under the previous application of the first commercial marketing of the drug under the previous application, or

(II) the date of a decision of a court in an action described in clause (iii) holding the patent which is the subject of the certification to be invalid or not infringed,

whichever is earlier.

21 U.S.C.A. § 355(j)(4)(B)(iv) (West Supp. 1997). Thus, the statute grants a 180-day period of exclusive marketing rights to the first generic manufacturer to file an ANDA containing a Paragraph IV certification, measuring from the date it decides to begin marketing after the 30-month stay has expired (presumably assuming the risk of liability for patent infringement) or from the date of a favorable patent infringement decision, whichever is earlier.

Further, pursuant to 21 U.S.C.A. § 371(a), FDA may promulgate regulations for the enforcement of the Food, Drug, and Cosmetic Act as a whole, and has done so with regard to the 180-day market exclusivity provision. See 21 U.S.C.A. § 371(a) (West 1972). That regulation, found at 21 C.F.R. § 314.107(c)(1), states that:

(1) If an abbreviated new drug application contains a certification that a relevant patent is invalid, unenforceable, or will not be infringed and the application is for a generic copy of the same listed drug for which one or more substantially complete abbreviated new drug applications were previously submitted containing a certification that the same

6

patent was invalid, unenforceable, or would not be infringed and the applicant submitting the first application has successfully defended against a suit for patent infringement brought within 45 days of the patent owner's receipt of notice submitted under § 314.95, approval of the subsequent abbreviated new drug application will be made effective no sooner than 180 days from whichever of the following dates is earlier:

 (i) The date the applicant submitting the first application first commences commercial marketing of its drug product; or

 (ii) The date of a decision of the court holding the relevant patent invalid, unenforceable, or not infringed.

21 C.F.R. § 314.107(c)(1) (1997) (emphasis added). This provision, therefore, not only restates the statutory requirements for the 180-day exclusivity period, but additionally requires that "the applicant submitting the first application has successfully defended against a suit for patent infringement." Id.

B.

The regulation's addition to the requirements for the 180-day exclusivity period is commonly known as the "successful defense" requirement, and has been enforced since the regulation's adoption in 1994. Earlier, in 1989, an unwritten FDA interpretation of the statute requiring that the Paragraph IV applicant be sued in order to be eligible for the exclusivity period was challenged as unreasonable in Inwood Laboratories, Inc. v. Young, 723 F. Supp. 1523 (D.D.C. 1989), appeal dismissed, 43 F.3d 712 (D.C. Cir. 1989). There, a district court granted a motion for a preliminary injunction against FDA on the ground that, because 21 U.S.C. § 355(j)(4)(B)(iv) was clear on its face, a court should not "permit[ ] the FDA to read into [the statute] a requirement of a lawsuit which is simply not there." Id. at 1526.

Nevertheless, FDA promlgated a regulation containing an even more demanding interpretation of the statute -- i.e., the "successful

7

defense" requirement -- in 1994. That regulation was itself challenged in an injunction context last year in <u>Mova</u>, where the District Court for the District of Columbia, while not declaring the regulation invalid, stated that the likelihood was "very high" that a challenge to the "successful defense" portion of the regulation as an impermissible addition to the relevant statute would succeed. <u>Mova</u>, 955 F. Supp. at 131. In so doing, the district court declared:

> The language of the statute may be complex, and even cumbersome, but it is plain and unambiguous. It does not include a "successful defense" requirement, and indeed it does not even require the institution of patent litigation. It was Mova's first filing of an ANDA for micronized glyburide [the drug there in question] under paragraph IV, and not Upjohn's infringement suit, that required FDA to withhold approval from subsequent paragraph IV filers. . . . The operation of the statute on the facts of this case may appear to FDA to be unwise, and may appear . . . to be an invitation for abuse, but their remedy lies with Congress, not this Court.

<u>Id.</u> at 130-31 (citing <u>Inwood</u>, 723 F. Supp. at 1526). Thus, <u>Mova</u> strongly implied that the regulation in question was not a permissible "interpretation" of the 180-day exclusivity provision in the statute.

C.

In the present case, Granutec successfully persuaded the district court to enjoin FDA from granting the 180-day marketing exclusivity period to its competitor, Genpharm, for the production of a generic form of Zantac, a medication for the treatment of ulcers and one of the largest-selling prescription drugs in the world. Granutec's argument in this regard was that, contrary to <u>Mova</u>, FDA erred in <u>not</u> applying the "successful defense" requirement. Granutec maintained that FDA's failure to follow its own regulation, which compelled the result that no ANDA applicant in this matter was entitled to 180-day exclusivity, was arbitrary and capricious. As stated above, FDA had adopted a position acquiescing in the <u>Mova</u> decision and its implications for the validity of the "successful defense" requirement. In

8

granting the injunction, however, the district court cited the regulatory "successful defense" requirement, without further explanation.

Granutec's claim against Genpharm resulted from a series of efforts by various pharmaceutical companies to use the Paragraph IV certification to gain FDA approval for a generic form of Zantac. The original patents for the two operative forms of ranitidine hydrochloride (ranitidine), the active ingredient in Zantac, belonged to Glaxo-Wellcome, Inc. (Glaxo), the pioneer manufacturer of Zantac. The two forms of ranitidine, Forms 1 and 2, are considered equivalent by FDA, but are covered by different patents: Patent No. 4,521,431 (the 431 patent) covers Form 2 ranitidine, and will expire on June 4, 2002, and Patent No. 4,128, 658 (the 658 patent) covers Form 1, and expired on July 25, 1997. See Brief of FDA at 11, 34 & n.3.

The first company to challenge either patent was Genpharm, which, in February 1991, filed an ANDA for a generic ranitidine product, and included a Paragraph IV certification as to the 431 patent for Form 2 ranitidine. Later, Genpharm amended that application to include a Paragraph IV certification as to the 658 patent as well. Glaxo filed an infringement suit within the 45-day statutory period, and prevailed in October 1995. See Glaxo, Inc. v. Genpharm Pharmaceuticals, Inc., C.A. Nos. K-92-1831 and K-93-4228 (D. Md. Oct. 23, 1995). In 1996, Genpharm filed a Paragraph IV certification under its ANDA alleging non-infringement of the 431 patent for Form 1 ranitidine, and again Glaxo sued. That case remained pending when this appeal was filed.

In January 1994, Geneva filed an ANDA for generic ranitidine, which included a Paragraph IV certification as to the 431 patent for a Form 1 product. Glaxo sued Geneva, and that case also remained pending as of the time this appeal was filed.

In April 1994, Granutec filed an ANDA for generic ranitidine, which also included a Paragraph IV certification as to the 431 patent for a Form 1 product. Glaxo sued, and Granutec prevailed in July 1996; Glaxo appealed that decision and lost on appeal when the Federal Circuit affirmed on April 4, 1997. See Glaxo, Inc. v. Novopharm, Ltd., 931 F. Supp. 1280 (E.D.N.C. 1996), aff'd, 110 F.3d 1562 (Fed. Cir. 1997). In the wake of this decision, Glaxo and Granutec entered

9

into a licensing agreement regarding the 658 patent, which provided that, in exchange for a substantial monetary payment, Glaxo would allow Granutec to begin marketing generic Zantac on July 10, 1997, fifteen days before the scheduled expiration of the 658 patent.

This case was instituted when Granutec, having entered into the 15-day licensing agreement with Glaxo for its generic version of Zantac, sought FDA approval of its ANDA effective July 10, 1997. FDA responded that it could not approve Granutec's ANDA effective as of July 10, 1997. Pursuant to its decision to acquiesce in Mova and that decision's implications for the "successful defense" requirement, FDA concluded that Genpharm was entitled to the 180-day marketing exclusivity period because Genpharm filed the first ANDA with a Paragraph IV certification for Zantac. FDA measured Genpharm's exclusivity period from March 3, 1997, the date that Glaxo's right to appeal expired in Glaxo, Inc. v. Boehringer Ingelheim Corp., 954 F. Supp. 469 (D. Conn. 1996), judgment entered by 962 F. Supp. 295 (D. Conn. 1997), aff'd, No. 97-1283, 1997 WL 355339 (Fed. Cir. June 4, 1997), a wholly unrelated suit in which a district court determined that Boehringer Ingelheim's generic version of Form 1 ranitidine did not infringe upon Glaxo's 431 patent.

This judgment, FDA claimed, satisfied the requirement of 21 U.S.C.A. § 355(j)(4)(B)(iv) that, before the 180-day period of exclusivity can begin, there must be "a decision of a court in an action . . . holding the patent which is the subject of the certification to be invalid or not infringed." 21 U.S.C.A. § 355(j)(4)(B)(iv)(II) (emphasis added). As FDA had decided to "acquiesce" in the Mova decision, it did not apply the additional "successful defense" requirement found in 21 C.F.R. § 314.107(c)(1).

On June 17, 1987, Granutec filed this action, seeking declaratory and injunctive relief against FDA, in the District Court for the Eastern District of North Carolina. Granutec alleged that no company was entitled to a 180-day exclusivity period and sought approval of its ANDA effective July 10, consistent with the terms of its license from Glaxo. Genpharm and Geneva intervened and cross-claimed, and, on July 3, 1997, the district court dismissed the two cross-claims and, sua sponte, granted a permanent injunction against FDA.

10

This appeal followed. Although FDA was the party against whom the district court enforced the permanent injunction, on appeal the agency has realigned itself. FDA now asserts that the district court's injunction was proper and should be upheld.

On July 9, 1997, we entered a stay of the district court's injunction pending appeal. We also ordered Genpharm and Geneva each to post a five million dollar supersedeas bond to protect Granutec's stake in the event we ultimately affirmed the district court's order. Granutec thereafter executed an agreement with Genpharm wherein Genpharm waived any entitlement to exclusivity in favor of Granutec, but preserved Granutec's right to challenge Genpharm's claim to exclusivity. In the wake of this agreement, FDA approved Granutec's ANDA effective August 1, 1997, and Granutec has been marketing its generic version of Zantac since that date.

On August 6, 1997, the District Court for the District of New Jersey dismissed with prejudice Glaxo's infringement claim against Geneva. See Glaxo, Inc. v. Geneva Pharmaceuticals, Inc., C.A. Nos. 94-1921 and 94-4589 (D.N.J. Aug. 6, 1997). FDA thereafter approved Geneva's ANDA as of August 29, 1997. On August 15, 1997, Genpharm prevailed over Glaxo in its infringement suit. See Glaxo-Wellcome, Inc. v. Genpharm, Inc., No. 96-CIV-6719 (S.D.N.Y. Aug. 15, 1997). FDA approved Genpharm's ANDA effective August 22, 1997, and Genpharm has marketed its generic since that date.

II.

This case turns on a fundamental problem of administrative law: an agency's authority to interpret the statutes it is required to enforce.

A.

Genpharm and Geneva allege that the district court incorrectly required FDA to adhere to the "successful defense" requirement -- a requirement that both companies claim is invalid because it directly conflicts with the plain language of the statutory provision regarding the 180-day market exclusivity period. In support of this allegation, Genpharm and Geneva cite Mova, and other cases holding that regu-

11

lations, like the one here, that add to rather than elucidate a statutory requirement go beyond an agency's authority to interpret legislative grants of power. We agree with their argument.

As Judge Robertson stated in Mova when he examined the validity of the "successful defense" requirement, the language of 21 U.S.C.A. § 355(j)(4)(B)(iv) is "plain and unambiguous. It does not include a `successful defense' requirement, and indeed it does not even require the institution of patent litigation." Mova, 955 F. Supp. at 130. In light of this plain and unambiguous language, FDA's interpretive authority with regard to the statutory provision is limited to the extent that Congress has already spoken directly to the issue addressed by the regulation. See Chevron U.S.A. v. Natural Resources Defense Council, 467 U.S. 837, 842-45 (1984).

Here, that issue involves the exact requirements a generic manufacturer must satisfy to qualify for the 180-day market exclusivity period. By expressly including certain requirements in the statute to the exclusion of all others, Congress presumably intended that the statutory requirements would comprise the full measure of eligibility. As we held in Cabell Huntington Hospital, Inc. v. Shalala, 101 F.3d 984, 990-91 (4th Cir. 1996), an agency cannot issue regulations that alter the statute's requirements for benefits the agency administers. All that Congress required for the 180-day exclusivity period is: (1) the filing of the first ANDA that includes a Paragraph IV certification; and (2) either (a) the first commercial marketing of the drug (after no infringement suit has been filed within 45 days or no resolution to such a suit has been reached after the expiration of the 30-month stay), or (b) a decision that the patent in question is either invalid or not infringed. See 21 U.S.C.A. § 355(j)(4)(B)(iv).

Demanding a "successful defense" neither interprets the statute nor fills a gap left by statutory silence. Rather, the"successful defense" requirement adds a requirement not contemplated in the statute, and, as Genpharm notes, renders superfluous 21 U.S.C.A. § 355(j)(4)(B)(iv)(I), which allows the 180-day period to begin at the time FDA receives notice of marketing of the drug, regardless of the outcome of any infringement suit. See Foxglenn Investors L.P. v. Cisneros, 35 F.3d 947, 950-51 (4th Cir. 1994) (declaring invalid a

12

regulatory interpretation that rendered a section of the applicable statute superfluous).

Both Granutec and FDA argue that the regulation in question merely elucidates rather than adds to the requirements for the 180-day exclusivity period. Further, Granutec painstakingly attempts to demonstrate that the regulation does not render 21 U.S.C. § 355(j)(4)(B)(iv)(I) superfluous. Granutec and FDA cite legislative history in support of their argument that the regulation is consistent with the statute. However, both are mistaken. Chevron clearly states that the determination of a regulation's validity under its enabling statute involves a two-stage process. Analysis of legislative history and policy goals occurs at the second stage, and is reached only if Congress, through the relevant statute, has not spoken directly to the issue in question. See Chevron, 467 U.S. at 842-43. If Congress has so spoken, "that is the end of the matter," id. at 842; a court simply does not undertake to assess the reasonableness of the agency's interpretation of the statute if Congress has spoken.

Our examination of the regulation's relation to the statute never reaches the second stage in this case. Congress has plainly laid out the requirements for the 180-day exclusivity period in the statute (albeit in tortured language), and, thus, our inquiry into Congressional intent must end there. Having found the exclusivity requirements embodied in the statutory language of 21 U.S.C.A. § 355(j)(4)(B)(iv) clear and conclusive, we are bound to hold invalid any attempt to alter the terms of that statute.

The "successful defense" requirement in 21 C.F.R. § 314.107(c)(1) amounts to such an alteration because it adds a requirement to 21 U.S.C.A. § 355(j)(4)(B)(iv) that Congress never contemplated. Further, the idea that any 180-day exclusivity period must be premised on the successful defense of an infringement suit results in the evisceration of 21 U.S.C.A. § 355(j)(4)(B)(iv)(I), which clearly contemplates an exclusivity period beginning -- whether or not an infringement suit has come to resolution -- on the date of first commercial marketing by the first ANDA filer.

Thus, we hold the "successful defense" requirement contained in 21 C.F.R. § 314.107(c)(1) to be an invalid addition to the statutory

13

requirements for exclusivity. Genpharm, as the first ANDA filer, was therefore entitled to a period of exclusivity under the statute.[1]

B.

Having concluded that the "successful defense" requirement imposed by 21 C.F.R. § 314.107(c)(1) is invalid, we turn now to determine how to measure Genpharm's period of exclusivity. This determination depends upon the interpretation given to the phrase "the date of a decision of a court" holding the patent invalid or not infringed, as used in 21 U.S.C.A. § 355(j)(4)(B)(iv)(II). The litigants (and amicus Boehringer Ingelheim Corp.) espouse multiple interpretations of the phrase, and, accordingly, suggest just as many different dates from which to measure exclusivity.

FDA has adopted alternative positions regarding how to interpret this provision, depending upon our decision with regard to the validity of the "successful defense" requirement. If we upheld the "successful defense" requirement found in 21 C.F.R. § 314.107(c)(1), FDA argued that, pursuant to the language of that regulation, we should conclude "a court" means " the court" that rendered the "successful defense" decision for the first ANDA applicant. Thus, no litigant would be entitled to exclusivity because the only litigant ever possibly entitled was Genpharm, and Genpharm had not successfully defended when Granutec sought approval of its ANDA effective July 10.

_____

[1] We reject Geneva's argument that Genpharm lost its place in line as the first ANDA applicant, and thus the only ANDA applicant, eligible for exclusivity. FDA maintains that, although Genpharm did not make the Paragraph IV certification relevant to these proceedings until 1996, Genpharm qualifies as the first ANDA applicant for purposes of the exclusivity because the certification relates back to the date of its ANDA application. This interpretation does not clearly conflict with either the regulations or the statute, and thus we find no reason to substitute a contrary judgment on this matter for that of FDA. See Chevron, 467 U.S. at 843-45; Pauley v. Beth Energy Mines, Inc., 501 U.S. 680, 696-98, 705-06 (1991); Mullins Coal Co. v. Director, OWCP, 484 U.S. 135, 159 (1987); Lisa Lee Mines v. Director, OWCP, 86 F.3d 1358, 1360-63 & n.8 (4th Cir. 1996).

However, in the event that we found the "successful defense" requirement invalid, as we have, FDA adheres to the argument consistent with its original position in this suit, reflecting its acquiescence in <u>Mova</u>. That is, the "successful defense" requirement being invalid, FDA argues that "<u>a</u> court" means "<u>any</u> court." By this reasoning, Genpharm's exclusivity began running at the date of a decision by the first court to hold the 431 patent not infringed, whether or not that decision involved Genpharm (the first ANDA applicant).

FDA then combines this reasoning with the terms of 21 C.F.R. § 314.107(e). "[F]or purposes of establishing the effective date of approval," that section defines "a decision of a court" in terms of a "final judgment from which no appeal can be or has been taken." Section 314.107(e) goes on to state that "the date of final decision" shall be, in the case of no appeal by the patent holder,"the date on which the right to appeal lapses," and, in the case of an appeal, "the date of the first decision or order by a higher court" affirming the district court's non-infringement decision. 21 C.F.R. § 314.107(e) (1997). Thus, FDA concludes that Genpharm's period of exclusivity ran from March 3, 1997 -- the date that Glaxo's right of appeal lapsed in the <u>Boehringer Ingelheim</u> suit**2** -- and expired 180 days later on August 29, 1997.

_____

**2** Genpharm contends that Glaxo did appeal the district court's order, and thus March 3, 1997, is an improper date to measure from even under FDA's analysis. We disagree. By order dated October 7, 1996, the district court in the <u>Boehringer</u> suit granted partial summary judgment to Boehringer on the basis of Glaxo's express concession that Boehringer's generic did not infringe the 431 patent. Thereafter, on November 18, 1996, the court entered partial summary judgment in Boehringer's favor on Glaxo's claim that Boehringer infringed Glaxo's patents by filing its ANDA. On January 30, 1997, the court entered final judgment with regard to both of these orders. <u>See Glaxo, Inc. v. Boehringer Ingelheim Corp.</u>, 962 F. Supp. 295 (D. Conn. 1997). Glaxo appealed that judgment and lost, <u>see</u> 1997 WL 355339 (Fed. Cir. June 4, 1997); however, it appealed only with regard to the November 18 order, not the October 7 order that the district court entered on the basis of Glaxo's express concession of non-infringement. <u>See id.</u> at n.1; <u>see also</u> Memorandum of Genpharm, Inc., in Support of its Mot. for an Inj. Pending Appeal, at Tab 4 (Aug. 18, 1997) (copy of letter from attorney for Glaxo to attorney for Boehringer Ingelheim declaring that "Glaxo is not appealing the Court's October 7, 1996 decision").

15

Although FDA's "successful defense" regulation was an invalid attempt to impose an additional requirement in derogation of the statutory scheme, FDA's reading of "the date of a decision of a court" simply interprets ambiguous statutory terminology. Despite the corporate litigants' arguments and protests to the contrary, this statutory language possesses no clear, definite meaning. For the purpose of measuring exclusivity under this statutory scheme,"the date of a decision" may mean the date of a district court decision, but it may also mean -- without, contrary to Granutec's suggestion, doing harm to ordinary principles of finality and res judicata-- the date appeal rights lapse or the date a higher court renders its first decision, as FDA's regulation contemplates. Similarly, "a court" may mean "the court," but it may just as well mean "any court." A fair reading of this statutory language does not clearly dictate a particular interpretation.

Each version bears certain problems in relation to the statutory scheme. At first blush, FDA's preferred interpretation (if the "successful defense" requirement is invalid) achieves a seemingly anomalous result in that a first applicant (here, Genpharm) receives an entitlement to exclusivity during a period when, presuming the imposition of a 30-month stay under 21 U.S.C.A. § 355(j)(4)(B)(iii), that applicant may not be able to take advantage of its exclusive rights until the 30-month period ends or it receives a favorable non-infringement judgment. However, this interpretation seeks to thwart any attempt by pioneer drug manufacturers to capture the generic market, and to some degree achieves that goal. Furthermore, although FDA's interpretation subjects first applicants to the vagaries of timing and speed attributable to different courts, it does not strip exclusivity of all value. As Genpharm and Granutec have demonstrated, the ability to waive exclusivity in favor of another generic manufacturer can be quite lucrative.

By contrast, Genpharm and Geneva contend that "a court" must mean "the court," and thus each maintains that the period of exclusivity cannot begin to run until the generic manufacturer entitled to exclusivity begins marketing or wins a patent infringement suit brought against it by the pioneer manufacturer. This interpretation preserves exclusivity for the first applicant until it prevails in litigation, or at least until it begins marketing while assuming the risk of losing the litigation. However, it clears the way for generic capture.

16

Such a result would be antithetical to the very purpose of the exclusivity incentive and the entire ANDA regime. As the legislative history of the Hatch-Waxman amendments indicates, the ANDA scheme purports to "make available more low cost generic drugs." H.R. Rep. No. 98-857, pt. 1, 98th Cong., 2d Sess., at 14 (1984), reprinted in 1984 U.S.C.C.A.N. 2647, 2647. A situation where no generic can come to market because the pioneer has imposed a stranglehold by gaining entitlement to an exclusive marketing period for its captured generic, yet never exercises that right, could not have been contemplated by Congress.**3**

Given the complicated and sensitive nature of the statutory drug approval mechanism, we choose to defer to the interpretation posited by the agency charged by Congress with administering the statutory scheme. FDA's interpretation of the statutory language and its own regulations is a permissible, reasonable interpretation of a complicated legislative framework that reflects a considered balance of competing statutory goals. We recognize that positions adopted by an agency solely for litigation do not deserve the deference of this Court. See Bowen v. Georgetown Univ. Hosp., 488 U.S. 204, 213 (1988) ("Deference to what appears to be nothing more than an agency's convenient litigating position would be entirely inappropriate."). However, we are not faced with such a situation here. FDA did not adopt its current position in anticipation of this litigation, but in response to the Mova decision, which suggested the probable invalidity of the "successful defense" requirement. It made its position known to all ANDA applicants seeking approval in the wake of

_____

**3** We recognize that even under FDA's interpretation a pioneer could place a stranglehold on the generic market, although we think it is less likely. For example, a pioneer in control of a captured generic could file the first ANDA with a Paragraph IV certification. As long as the pioneer prevents its captured generic from going to market and at the same time does not file an infringement suit against any generic manufacturer (captured or non-captured), the captured generic's exclusivity period would never begin to run, and no generic could begin to sell pursuant to a Paragraph IV certification. The "successful defense" requirement would solve this problem, were it valid. But this problem, like many others, arises from the manner in which Congress drafted the exclusivity mechanism, and, as such, the remedy lies with Congress.

17

Mova, seeking to avoid any forum shopping that might result. Indeed, it was FDA's adherence to its post-Mova position that precipitated this lawsuit by Granutec. In such a situation, the concerns that caution against deference to an agency's litigation position do not exist because the position reflects the thoughtful judgment of the agency, not just the posture of litigation counsel. See National Wildlife Fed'n v. Browner, 127 F.3d 1126, 1129 (D.C. Cir. 1997) (citing Auer v. Robbins, 117 S. Ct. 905, 912 (1997)); Herman v. NationsBank Trust Co., 126 F.3d 1354, 1363 (11th Cir. 1997); Appalachian States Low-Level Radioactive Waste Comm'n v. Pena, 126 F.3d 193, 198-99 (3rd Cir. 1997); Monongahela Power Co. v. Reilly, 980 F.2d 272, 279 & n.7 (4th Cir. 1993).

C.

Both Genpharm and Geneva also assert jurisdictional and procedural grounds for reversal of the district court-- namely, that the district court lacked subject matter jurisdiction over this case and failed to give the intervenors the proper notice and hearing before dismissing the cross-claims and granting, sua sponte, a permanent injunction.

We would have jurisdiction if the district court lacked it, and thus all appellants have received the remedy they seek-- a full hearing and decision on the merits in the Court of Appeals. In addition, if we held that the district court failed to provide proper notice and hearing to the parties, the remedy would be to remand to the district court for largely the same proceedings that we have conducted.

For these reasons, we reject these allegations of procedural shortcomings on the part of the district court.

III.

In sum, then, we hold that the "successful defense" requirement imposed by 21 C.F.R. § 314.107(c)(1) is invalid. Further, we hold that, under the interpretation of the statutory scheme adopted by the FDA in contemplation of such a decision, Genpharm was entitled to a period of exclusivity that ran from March 3, 1997, until August 29, 1997. Because Genpharm waived its exclusivity with regard to

18

Granutec, and FDA approved Geneva's ANDA as of August 29, 1997, no party has violated Genpharm's period of exclusivity. Granutec was never entitled to begin marketing on July 25, 1997, so its agreement with Glaxo to begin marketing on July 10, 1997, was based on an erroneous premise. The supersedeas bonds shall be returned, along with accrued interest, to Genpharm and Geneva.

We understand this opinion will not satisfy any party to this suit. In cases involving complicated regulatory schemes such as this, we seek to give full effect to the plain language of a statute while simultaneously deferring to reasonable interpretations offered by the relevant federal agency. The complex legislative scheme and the awkwardly drafted statute at issue here do not lend themselves to simple solutions, particularly when further complicated by secondary licensing arrangements, a stay pending appeal, and multi-million dollar bonds. In accordance with this opinion, the judgment of the district court is hereby

REVERSED.

19